```
                          UNITED STATES DISTRICT COURT
                          SOUTHERN DISTRICT OF FLORIDA

                          CASE NO. 09-23230-Civ-LENARD
                          MAGISTRATE JUDGE P.A. WHITE

ROBERT JOHNSON,               :

     Petitioner,              :

v.                            :     REPORT OF
                                    MAGISTRATE JUDGE
WALTER A. McNEIL,             :

     Respondent.              :
_____
```

I. Introduction

Robert Johnson is a convicted state felon who was confined at South Bay Correctional Institution at South Bay, Florida at the time he filed this pro se petition for writ of habeas corpus pursuant to 28 U.S.C. §2254, attacking his convictions entered in Case No. 00-19788 in the Circuit Court of the Eleventh Judicial Circuit of Florida at Miami-Dade County.[1]

This Cause has been referred to the undersigned for consideration and report pursuant to 28 U.S.C. §636(b)(1)(B) and Rules 8 and 10 of the Rules Governing Section 2254 Cases in the United States District Courts.

For its consideration of the petition with attached exhibits

---

[1] After the filing of the instant petition, Johnson was released from incarceration to the street on March 1, 2010, having completely served his term of imprisonment. See http://www.dc.state.fl.us. Although Johnson is not in custody pursuant to the convictions he challenges in this federal habeas corpus proceeding, this Court has jurisdiction. The "in custody" determination is made at the time the section 2254 petition is filed. Carafas v. LaVallee, 391 U.S. 234, 238 (1968). Once the jurisdictional prerequisite of custody is met at the time of filing, jurisdiction is not defeated by the petitioner's subsequent release from custody while the petition is pending. Id. Thus, Johnson meets the in custody requirement since at the time of the filing of this petition he was in fact in custody pursuant to the convictions he attacks.

(DE# 1), the Court has the petitioner's responses to an order regarding the limitations period (DE# 8, 16), the respondent's response to an order to show cause with multiple exhibits (DE# 12, 13, 15, 22), and the petitioner's reply (DE# 17).

## II. Claims

Johnson raises the following grounds for relief:

1. He received ineffective assistance of trial counsel, because his lawyer failed to request a special jury instruction pursuant to Arizona v. Youngblood, 488 U.S. 51 (1988).

2. He received ineffective assistance of appellate counsel, because his lawyer failed to raise a meritorious claim on direct appeal.

3. He is actually innocent of the crimes for which he was convicted.

## III. Procedural History

Johnson was charged by Information with three felony counts of battery on a law enforcement officer for spitting on Miami-Dade Police Officer Flavio Escobar. (DE# 13; App. A). He was also charged with the misdemeanor offenses of criminal mischief and resisting an officer without violence. Id. The case proceeded to trial before a jury, after which Johnson was found guilty of one of the three battery counts and guilty of the misdemeanor offenses. (DE# 13; App. B). He was adjudicated guilty of the offenses and sentenced as a violent career criminal on the battery charge to a term of imprisonment of fifteen years with a ten-year mandatory minimum term. (DE# 13; App. C). Sentence was suspended as to the misdemeanor offenses. Id.

Johnson prosecuted a direct appeal from his convictions and sentences, alleging that the trial court erred in (1) refusing to instruct the jury on his right to defend himself against excessive

force, and (2) sentencing him as a violent career criminal on the basis of non-qualifying offenses. (DE# 13; App. D). The Florida appellate court *per curiam* affirmed the convictions and sentences without written opinion. See <u>Johnson v. State</u>, 831 So.2d 189 (Fla. 3 DCA 2002). Johnson filed, through counsel, a motion for rehearing, rehearing en banc, or certification. (DE# 13; App. F). The appellate court granted the motion for rehearing, withdrew its earlier issued decision, and filed a substituted written opinion. <u>See</u> <u>Johnson v. State</u>, 879 So.2d 633 (Fla. 3 DCA 2004). The appellate court remanded the case for resentencing, holding that Johnson did not have any current qualifying offense that would authorize application of the violent career criminal sentencing statute. <u>Id</u>. On remand, the trial court re-sentenced Johnson as an habitual offender to a ten-year term of imprisonment. (DE# 13; App. G). After proceedings conducted pursuant to <u>Anders v. California</u>, 386 U.S. 738 (1967), the newly-imposed sentence was *per curiam* affirmed in a decision without written opinion issued on August 4, 2004. (DE# 13; App. H, I). <u>See also</u> <u>Johnson v. State</u>, 879 So.2d 633 (Fla. 3 DCA 2004)(table).

After waiting one-year, Johnson returned to the trial court, filing on August 8, 2005, a <u>pro</u> <u>se</u> motion for postconviction relief pursuant to <u>Fla.R.Crim.P</u>. 3.850, raising the sole claim that he received ineffective assistance of trial counsel regarding his right to testify in his own behalf. (DE# 13; App. J). Specifically, he alleged that his lawyer had misadvised him that the jury would learn of the nature of his prior convictions if he testified at trial. <u>Id</u>. The state filed a response with supporting exhibit, consisting of an excerpt of the trial transcript. (DE# 13; App. K). The state argued that Johnson was not entitled to postconviction relief in that the claim was refuted by the record and meritless based upon the standard established in <u>Strickland v. Washington</u>,

3

466 U.S. 668 (1984). Id. The trial court agreed with the state and summarily denied the motion, finding that Johnson had not met the two-pronged test of *Strickland*. (DE# 13; App. L). Johnson filed a timely notice of appeal from the trial court's ruling, but the appeal was ultimately dismissed on September 20, 2006, upon Johnson's notice of voluntary dismissal. (DE# 13; App. M, N). See also Johnson v. State, 937 So.2d 672 (Fla. 3 DCA 2006)(table).

Eleven months after the dismissal, on August 17, 2007, Johnson filed in the trial court a pro se petition for writ of habeas corpus with supporting memorandum of law essentially alleging that (1) he received ineffective assistance of trial counsel, because his lawyer failed to present at trial exculpatory evidence of his innocence (i.e., test results of saliva or mucus found in the police vehicle); (2) his convictions were based upon fabricated testimony of the police officers and were violative of the principles established in Brady v. Maryland, 373 U.S. 83 (1963) where exculpatory evidence in the form of medical reports or photographs was not disclosed; and (3) he was arrested in violation of his equal protection rights. (DE# 22). By form order entered on August 24, 2007, and filed on August 31, 2007, the trial court summarily denied the petition as insufficient to support the relief prayed. (DE# 13; App. O). More than one year later, on September 15, 2008, Johnson sought review of the denial of his state habeas corpus petition, filing in the Florida Third District Court of Appeal a pro se Petition for Writ of Habeas Corpus for Belated Appeal with supporting exhibits. (DE# 13; App. P). Johnson maintained that he had never received a copy of the trial court's ruling and was, therefore, entitled to belated review. Id. The appellate court granted the petition for belated appeal on September 9, 2009, permitting review of the denial of his habeas petition. (DE# 13; App. R). See also Johnson v. State, 17 So.3d

4

1235 (Fla. 3 DCA 2009)(table). The appeal was ultimately dismissed on March 9, 2010, upon the appellate court's own motion, due to Johnson's failure to comply with the court's order to file an initial brief and the Florida Rules of Appellate Procedure. See Johnson v. State, 28 So.3d 55, 2010 WL 933856 (Fla. 3 DCA 2010)(table). The case was disposed of without mandate on March 30, 2010. See http://www.3dca.org.²

While the belated state appellate proceedings were pending, Johnson came to this Court, filing on October 20, 2009,³ the instant pro se petition for writ of habeas corpus pursuant to 28 U.S.C. §2254. The respondent asserts in his response to the order to show cause that this petition should be dismissed as untimely filed pursuant to 28 U.S.C. §2244(d). See Response to Order to Show Cause at 5-9. (DE# 12). The respondent argues in the alternative that the petition should be denied in that claim one is meritless, claim two is unexhausted and/or procedurally barred from federal habeas corpus review, and claim three is not cognizable in this habeas corpus proceeding. Id. at 9-18. Since the limitations argument is dispositive of the instant petition, for the reasons stated below, this Court need not address the other potential procedural defenses raised by the respondent, although they too

---

²The Court takes judicial notice of information available at the database maintained by the Clerk of Court, Florida Third District Court of Appeal, http://www.3dca.flcourts.org., in Johnson v. State, Case No. 3D09-2539. See Fed.R.Evid. 201.

³This Court applies the "mailbox rule" and deems the Petition "filed on the date it was delivered to prison authorities for mailing." Alexander v. Sec'y Dep't of Corr., 523 F.3d 1291, 1294 n. 4 (11 Cir. 2008). See also Adams v. U.S., 173 F.3d 1339 (11 Cir. 1999)(prisoner's pleading is deemed filed when executed and delivered to prison authorities for mailing). Although the executed petition here is not dated, a subsequent copy of the petition provided to this Court indicates that the petition was apparently delivered to prison authorities for mailing on October 20, 2009. See DE# 7. This Court will deem the petition filed as of that date.

appear meritorious, and/or the merits of the claims raised.

## IV. Discussion

Under the Antiterrorism and Effective Death Penalty Act ("AEDPA"), a petitioner must generally file his §2254 petition within one year from the date that his conviction and sentence became final by the conclusion of direct review or the expiration of the time for seeking such review. See 28 U.S.C. §2244(d)(1)(A);[4] Jimenez v. Quarterman, 555 U.S. ___, ___, 129 S.Ct. 681, 685-86, 172 L.Ed.2d 475 (2009)(explaining the rules for calculating the one-year period under §2244(d)(1)(A)). This period is tolled while a properly filed application for State post-conviction relief or other collateral review with respect to the pertinent judgment or claim is pending.[5] 28 U.S.C. §2244(d)(2). Moreover, the one-year limitations period is subject to equitable tolling in appropriate cases. Holland v. Florida, ___ U.S. ___, 130 S.Ct. 2549 (June 14,

---

[4]The statute provides that the limitations period shall run from the latest of —

    (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
    (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such action;
    (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
    (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. §2244(d)(1).

[5]A properly-filed application is defined as one whose "delivery and acceptance are in compliance with the applicable laws and rules governing filings," which generally govern such matters as the form of the document, the time limits upon its delivery, the court and office in which it must be lodged, and the requisite filing fee. Artuz v. Bennett, 531 U.S. 4 (2000)(overruling Weekley v. Moore, 204 F.3d 1083 (11 Cir. 2000)).

2010). See also Pace v. DiGuglielmo, 544 U.S. 408, 418, 125 S.Ct. 1807, 161 L.Ed.2d 669 (2005)(holding that a petitioner is entitled to equitable tolling only if he shows "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way" and prevented timely filing); Helton v. Secretary  for Dept. of Corrections, 259 F.3d 1310, 1312 (11 Cir. 2001)(stating that "[e]quitable tolling can be applied to prevent the application of the AEDPA's statutory deadline when 'extraordinary circumstances' have worked to prevent an otherwise diligent petitioner from timely filing his petition."), cert. denied, 535 U.S. 1080 (2002); Sandvik v. United States, 177 F.3d 1269, 1271 (11 Cir. 1999).

The judgment of conviction and sentence in the subject criminal case became final at the latest on November 2, 2004, ninety days after the appellate court affirmed his resentencing judgment. See Jimenez v. Quarterman, 129 S.Ct. at 685; Ferreira v. Sec'y, Dep't of Corr., 494 F.3d 1286, 1293 (11 Cir. 2007)("AEDPA's statute of limitations begins to run when the judgment pursuant to which the petitioner is in custody, which is based on both the conviction *and the sentence* the petitioner is serving, is final.")(emphasis added). See also Rules of the Supreme Court of the United States, Rules 13.1, 13.3;[6] Chavers v. Sec. Dept. of Corrections, 468 F.3d 1273, 1275 (11 Cir. 2006). Therefore, Petitioner had one year from that date, or until November 2, 2005,

---

[6]The respondent mistakenly states that the Petitioner's conviction became final on August 20, 2004, when the Florida Third District Court of Appeal issued its mandate affirming Petitioner's new sentence. The respondent failed to include the additional ninety days for filing a petition for writ of certiorari in the United States Supreme Court which runs from the date that the state appellate court issued its opinion. See Supreme Court Rule 13.3 (stating, in pertinent part, that "[t]he time to file a petition for a writ of certiorari runs from the date of entry of the judgment or order sought to be reviewed, and not from the issuance date of the mandate[.]"). While this Court disagrees with the respondent's date of finality, the Court nevertheless agrees with the respondent's conclusion that the instant petition is time-barred.

7

to file his habeas corpus petition unless he availed himself of one of the statutory provisions which extends or tolls the time period. 28 U.S.C. §2244(d)(2). As indicated above, Johnson pursued postconviction proceedings in both the state trial and appellate courts. He filed his Rule 3.850 motion **278** days after his convictions and sentences became final. He is, therefore, entitled to tolling-time credit while the motion remained pending before the state trial and appellate courts (i.e., from August 8, 2005, through September 20, 2006, when the appeal was dismissed). Johnson, therefore, had **87**-days from September 20, 2006 (i.e., December 18, 2006) to file his federal petition or to pursue other proper state court applications for relief. No state court proceedings were instituted until August 20, 2007, when Johnson filed his state court petition for writ of habeas corpus.

Since the state habeas petition was filed after the one-year limitation period had already expired on December 18, 2006, he is not entitled to tolling credit for that proceeding while it was pending in the state courts.[7] Tinker v. Moore, 255 F.3d 1331, 1333 (11 Cir. 2001)(explaining that where a Rule 3.850 motion is filed after the expiration of the one-year period, it does not toll the period under §2244(d)(2) because no period remains to be tolled);

---

[7] It is pointed out that because Johnson's belated appeal was not a direct appeal of his conviction, the recent United States Supreme Court case Jimenez v. Quarterman, ___ U.S. ___, 129 S.Ct. 681, 686, 172 L.Ed.2d 475 (2009)(holding that "where a state court grants a criminal defendant the right to file an out-of-time direct appeal during state collateral review, but before the defendant has first sought federal habeas relief, his judgment is not yet 'final' for purposes of §2244(d)(1)(A).") does not affect the calculation of Johnson's AEDPA clock. See Hollinger v. Secretary Dept. of Corrections, 334 Fed.Appx. 302, 305, n. 4 (11 Cir. 2009). It is further noted that where a state court has granted leave to a petitioner to file a belated appeal from the denial of a postconviction motion, that permission does not relate back so as to toll the period between the expiration of the time to file a timely appeal and the granting of the belated appeal for AEDPA purposes. See Moore v. Crosby, 321 F.3d 1377 (11 Cir. 2003). The fact that Johnson was granted leave to pursue belated appellate proceedings from the denial of his state habeas petition has no effect whatever on the federal limitations period.

8

Webster v. Moore, 199 F.3d 1256, 1258-60 (11 Cir.)(holding that even properly filed state court petitions must be pending in order to toll the limitations period), cert. denied, 531 U.S. 991 (2000). See also Hollinger v. Secretary Dept. of Corrections, 334 Fed.Appx. 302, 304-305, 2009 WL 1833746, 2 (11 Cir. 2009), *citing*, Moore v. Crosby, 321 F.3d 1377, 1381 (11 Cir. 2003)(concluding that Rule 3.850 motion, "filed after expiration of the limitations period[,] does not relate back so as to toll idle periods preceding the filing of the federal [habeas] petition"); McMillan v. Secretary for Dept. of Corrections, 257 Fed.Appx. 249, 253, 2007 WL 4258652, *3 (11 Cir. 2007)(concluding that Petitioner not entitled to statutory tolling for the 95-day period between the date the state trial court's denial of his 3.850 motion became final and the date he filed his petition for a belated appeal of that 3.850 denial).

Thus, in order for this petition to be deemed timely, Johnson must demonstrate that he is entitled to proceed under one of §2244(d)(1)'s statutory tolling provisions, see §2244(d)(1)(B)-(D), or is entitled to equitable tolling of the limitations period. From full review of Johnson's pleadings filed in this Court, it appears that Johnson is in essence arguing that he is entitled to equitable tolling of the limitations period because the failure to review his challenges on the merits will result in a fundamental miscarriage of justice in that he is actually innocent of the crimes for which he was convicted. See DE# 1, 8, 16, 17. Johnson appears to maintain that his convictions were based upon falsified charges and false testimony provided by Miami-Dade Police Officer Flavio Escobar. He also asserts that convictions were not properly supported by the evidence, or that exculpatory evidence was not preserved or was withheld in violation of Brady v. Maryland, 373 U.S. 83 (1972) in that there were no photographs of him spitting inside the police

...

vehicle.[8]

It is first noted that it is still unclear whether the Eleventh Circuit will recognize an "actual innocence" exception to the AEDPA's one year statute of limitations.[9] See e.g., Milton v. Secretary, Department of Corrections, 347 Fed.Appx. 528, 2009 WL 3150246 (11 Cir. 2009), citing, Wyzykowski v. Department of Corr., 226 F.3d 1213, 1218-19 (11 Cir. 2000)("To avoid answering that difficult constitutional question until necessary, we have held that before addressing whether the AEDPA's limitations period

---

[8] In brief, the facts of this case, as gleaned from the trial transcript and briefs on direct appeal, are as follows. See Trial Transcript (DE# 15); Initial Brief of Appellant at 2-5 (DE# 12; Ex. D); Answer Brief of Appellee at 6 (DE# 12; Ex. E). Officer Flavio Escobar and Officer Ricardo Luis, a trainee, were dispatched to a gasoline station to investigate a trespassing complaint. Upon arrival at the station, they encountered Johnson who was holding a beer in his hand. Johnson walked away from the officers to the corner of the block where he sat down. When the officers told Johnson to leave, or he would be arrested, Johnson refused to do so. He was then arrested. Johnson resisted the officer's attempts to restrain him in handcuffs, but he was ultimately restrained by the two officers. Since Johnson had a minor cut on his wrist, the officers transported him to the hospital for medical treatment and clearance before admittance and booking at the jail. On the trip to the hospital, Johnson became belligerent and began to kick and spit. He failed to comply with the officer's demands to cease. The kicking damaged the door, leaving it partially open. The officers stopped the car to place leg restraints on Johnson. While Johnson was on the pavement, face up, Johnson began to spit at Officer Escobar. Once restrained, he was returned to the police car where he continued to spit, although told to restrain from such behavior. At the hospital, Johnson continued to spit at Officer Escobar and did so again at the jail. The officers testified at trial that Johnson had been spitting visible and extensive amounts of mucus all over the car. They admitted, however, that no photographs of the spitting inside the car had been taken, although pictures had been taken of the minor damage to the car door. The latter incidents of spitting were not detailed in writing, resulting in the jury finding Johnson guilty only of the battery offense involving the spitting in the police vehicle while not guilty of the subsequent battery offenses involving the incidents at the hospital and jail.

[9] Several other circuit courts have recognized such an exception. See e.g., Souter v. Jones, 395 F.3d 577, 602 (6 Cir. 2005)("[W]e hold that where an otherwise time-barred habeas petitioner can demonstrate that it is more likely than not that no reasonable juror would have found him guilty beyond a reasonable doubt, the petitioner should be allowed to pass through the gateway and argue the merits of his underlying constitutional claims."); Flanders v. Graves, 299 F.3d 974, 977 (8 Cir. 2002)("[A]ctual innocence, if it can be shown, opens the gate to consideration of constitutional claims on their merits, claims that would otherwise be procedurally barred.").

constitutes a violation of the Suspension Clause in the case of a claim of actual innocence, we should first consider whether the petitioner can show actual innocence."); Taylor v. Secretary, Dep't of Corrections, 230 Fed. Appx. 944, 945 (11 Cir. 2007)("[W]e have never held that there is an 'actual innocence' exception to the AEDPA's one-year statute of limitations, and we decline to do so in the instant case because [the petitioner] has failed to make a substantial showing of actual innocence.").

"To establish actual innocence, [a habeas petitioner] must demonstrate that ... 'it is more likely than not that no reasonable [trier of fact] would have convicted him.' Schlup v. Delo, 513 U.S. 298, 327-328, 115 S.Ct. 851, 867-868, 130 L.Ed.2d 808 (1995)." Bousley v. United States, 523 U.S. 614, 623 (1998). "[T]he *Schlup* standard is demanding and permits review only in the "'extraordinary' case." House v. Bell, 547 U.S. 518, 538 (2006). Thus, "[i]n the usual case the presumed guilt of a prisoner convicted in state court counsels against federal review of [untimely] claims." Id. at 537. In this context, "actual innocence" means factual innocence, not mere legal insufficiency. See Sawyer v. Whitley, 505 U.S. 333, 339 (1992). See also Bousley, 523 U.S. at 623-624; Doe v. Menefee, 391 F.3d 147, 162 (2 Cir. 2004)("As *Schlup* makes clear, the issue before [a federal district] court is not legal innocence but factual innocence."). *Schlup* observes that "a substantial claim that constitutional error has caused the conviction of an innocent person is extremely rare.... To be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence-whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence-that was not presented at trial. Because such evidence is obviously unavailable in the vast majority of cases, claims of actual innocence are

11

rarely successful." 513 U.S. at 324.

Here, Johnson fails to state a colorable claim of actual innocence. Johnson presents only his self-serving, conclusory assertion that he is actually innocent of the charges for which he stands convicted.[10] Johnson has submitted no evidence whatever let alone "new reliable evidence" to support his claim of actual innocence of the subject crimes nor has he suggested that this requisite evidence exists so as to meet the stringent standard. See House v. Bell, 547 U.S. 518. While it appears that Johnson is claiming that he suffered a due process violation based upon the conduct of the state in that the convictions were based upon fabricated charges and false testimony, it is clear that Johnson's claims really go to the credibility of the two police officers, the sole witnesses for the state. Evidence pertaining to the credibility of witnesses is not evidence of factual innocence. See Calderon v. Thompson, 523 U.S. 538, 562–63, 118 S.Ct. 1489, 140 L.Ed.2d 728 (1998)(rejecting evidence which impeached the credibility of the jailhouse informants who testified that petitioner confessed the rape and murder to them, the court held that the "impeachment evidence provide[d] no basis for finding a miscarriage of justice ... [because] the evidence is a step removed from evidence pertaining to the crime itself" (citation omitted)). See also Cannon v. Johnson, 23 Fed. Appx. 218, 2001 WL 1299002 (6 Cir. 2001)(habeas petitioner's allegation of prosecutorial misconduct related to fairness of trial, not actual innocence, and

---

[10]Absent supporting evidence in the record, a court cannot consider a habeas petitioner's mere assertions on a critical issue in his pro se petition to be of probative value. See Tejada v. Dugger, 941 F.2d 1551, 1559 (11 Cir. 1991) (recognizing that a petitioner is not entitled to habeas relief "when his claims are merely 'conclusory allegations unsupported by specifics' or 'contentions that in the face of the record are wholly incredible'" (citation omitted)). See also Ross v. Estelle, 694 F.2d 1008, 1011-12 (5 Cir. 1983).

thus could not be basis for tolling of statute of limitations for habeas petition). Thus, impeaching evidence alone cannot supply the basis for a new trial, in that it does necessarily prove perjury, which requires a showing that the witness intentionally lied on the stand. United States v. Schlei, 122 F.3d 944, 991 (11 Cir. 1997); Taylor v. State, 3 So.3d 986, 993-94 (Fla. 2 DCA 2009)(stating that when determining whether newly discovered evidence compels a new trial, trial court should consider whether the evidence goes to the merits of the case or whether it constitutes impeachment evidence). There has been no showing that either or both police officers fabricated the instant charges and/or lied on the stand when testifying in this particular case.

It is important to note that thorough review of the trial transcript has indicated that trial counsel forcefully and thoroughly cross-examined Officer Escobar about the incident, attempted to impeach his credibility. See Trial Transcript at 205-41. During cross-examination, trial counsel at times referred to the officer's earlier deposition testimony to demonstrate to the jury that the officer was not testifying truthfully. Id. Trial counsel also questioned Officer Escobar in great detail about his police report, pointing out omissions to indicate that the officer had not fully and truthfully documented the facts of the case which led to the subject criminal charges. Id. Trial counsel additionally pointed out to the jury that Officer Escobar's testimony was inconsistent with the evidence admitted at trial in that the photographs taken of the police vehicle did not display the large amount of spit and/or mucus coming from Johnson, as claimed. Id. Through questioning, trial counsel revealed that no photographs whatever had been taken of the vehicle to show the spit before the officer cleaned the car. Id.

Similarly, during the questioning of Officer Luis, trial counsel pointed out the lack of photographic or other physical evidence that Johnson had been spitting at Officer Escobar, as charged. Id. at 265-67, 279-80, 282-83, 309-10, 320. Officer Luis admitted that no videotaping of the incident had been made, no laboratory tests of the spit and mucus had been conducted, and Officer Escobar's uniform had not been preserved to show the bodily secretions. Id. During cross-examination, Officer Luis admitted that while he was also in close proximity to Johnson, and Johnson had been producing large quantities of spit and mucus, Johnson never spit at him and the secretions never reached him. Id. at 279-80. Trial counsel's further questioning of Officer Luis revealed that the portion of the police report which he had prepared included only one spitting incident, contrary to the testimony at trial. Id. at 311. Again, counsel attempted to cast doubt on the officers' version of the subject events.

Johnson presented the defense that the officers had not been truthful about the subject events and had fabricated the incident. The defense also argued that the state had failed to support the charges with physical evidence. The defense was succinctly stated at the start of closing argument to the jury by trial counsel as follows: "Ladies and Gentlemen, this case is about three things. It's about a little white lie; it's about officers acting without authority in arresting someone falsely; and it's about a coverup." Id. at 334. Trial counsel concluded rebuttal closing argument, with the following statements:

> And I ask for you to just look at all the evidence and to question what I have presented to you and question yourselves as to whether you have a reasonable doubt as to what happened that night.
>
> And question the officers' testimony because that's what you heard. The State wants you to rely on it and the defense wants

>     you to rely on that testimony too; and wants you to make that
>     decision if they're credible or not.

Id. at 368. Johnson has offered no new evidence whatever to support any assertion of actual innocence. Any "new" evidence pertaining to the believability of Officer Escobar and/or Officer Luis in no way undermines confidence in the result of his trial.[11] By finding Johnson guilty of certain offenses charged, the jury chose to believe the testimony of the state witnesses as to those offenses and reject Johnson's defense, as was its prerogative.[12] This Court must defer to the jury's judgment as to the weight and credibility of the evidence. See Wilcox v. Ford, 813 F.2d 1140, 1143 (11 Cir. 1987). Moreover, as was found by the state courts during the state habeas corpus proceeding, albeit implicitly, where the identical allegation was made, there is no evidence of record whatever that Johnson's convictions were based upon materially false evidence and falsified charges brought by the police.[13]

---

[11] Johnson states that Officer Escobar had been arrested and charged with the falsification of the police report in the instant case and directing training officer Luis to lie. See Petition Under 28 U.S.C. §2254 for Writ of Habeas Corpus by a Person in State Custody at 2. (DE# 16). Although Johnson provides a record reference for his assertion, no such exhibit has been submitted to this Court by either the petitioner or respondent. While it is possible that Officer Escobar may have been the subject of a criminal investigation or police internal affairs investigation, id. at 3, there is no indication whatever in the record that Officer Escobar provided false information in the instant case. Johnson's assertion is, therefore, wholly conclusory. Further, any information regarding the honesty and trustworthiness of Officer Escobar as it pertains to this case or any other case is clearly not new in that it was apparently revealed during the resentencing conducted in this case on December 18, 2003, long before Johnson alluded to the issue in his state habeas corpus proceedings. Id.

[12] It is the responsibility of the jury to resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. See Wilcox v. Ford, 813 F.2d 1140, 1143 (11 Cir. 1987), citing, Jackson v. Virginia, 443 U.S. 307, 326 (1979).

[13] It is undisputed that a state's knowing use of materially false evidence in a criminal prosecution is violative of due process principles. See Giglio v. United States, 405 U.S. 150, 153 (1972); Napue v. Illinois, 360 U.S. 264, 269 (1959).

15

Further, it appears from full review of the pleadings filed in this Court as well as the state court pleadings that Johnson is essentially challenging the sufficiency of the evidence to sustain his convictions. As the Schlup decision explains, the gateway actual-innocence standard is "by no means equivalent to the standard of Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)," which governs claims of insufficient evidence. Schlup, 513 U.S. at 330. As indicated above, actual innocence means factual innocence, not mere legal insufficiency. See Sawyer v. Whitley, 505 U.S. at 333; Bousley, 523 U.S. at 623-624; Doe v. Menefee, 391 F.3d at 162. It is important to note that the jury found Johnson not guilty of two of the three battery offenses charged, apparently based upon the lack of evidence to support those charges.

In any event, for equitable tolling to apply, a petitioner has the burden of proving: "(1) that he ha[d] been pursuing his rights diligently, *and* (2) that some extraordinary circumstance stood in his way and prevented timely filing." (emphasis added) Lawrence v. Florida, 549 U.S. 327, 336, 127 S.Ct. 1079, 1085, 166 L.Ed.2d 924 (2007)(quotation marks and citation omitted). The Eleventh Circuit has continued to emphasize that "[e]quitable tolling is an extraordinary remedy that must be applied sparingly" for "[a] truly extreme case." Holland v. Florida, 539 F.3d 1334, 1338 (11 Cir. 2008), rev'd and remanded on other grounds, ___ U.S. ___, 130 S.Ct. 2549 (2010). Review of the record in this case indicates that Johnson has not pursued the process with diligence and alacrity and has, therefore, not sustained his burden of proving that the factual predicates of this case warrant equitable tolling. For example, he waited 278-days from the time that his convictions and sentences became final before initiating state postconviction relief. He then waited an additional 11-months from the time that

the appeal from his Rule 3.850 motion was dismissed until he filed his state habeas corpus proceeding. Johnson offers no explanation whatever for these delays. One who fails to act diligently cannot invoke equitable principles to excuse that lack of diligence. See Baldwin County Welcome Center v. Brown, 466 U.S. 147, 151 (1984). See also Irwin v. Department of Veterans Affairs, 498 U.S. 89, 96 (1990)(principles of equitable tolling do not extend to what is best a garden variety claim of excusable neglect). "[E]quity is not intended for those who sleep on their rights." See Fisher v. Johnson, 174 F.3d 710 (5 Cir. 1999), citing, Convey v. Arkansas River Co., 865 F.2d 660, 662 (5 Cir. 1989).

The record also does not indicate that Johnson was in any way impeded by any unconstitutional State action in pursuing state postconviction relief or filing this federal petition for writ of habeas corpus. Finally, Johnson's status as an unskilled layperson does not excuse the delay. See Johnson v. United States, 544 U.S. 295, 311, 125 S.Ct. 1571, 1582 (2005)(stating that "the Court has never accepted *pro se* representation alone or procedural ignorance as an excuse for prolonged inattention when a statute's clear policy calls for promptness."). See also Rivers v. United States, 416 F.3d at 1323 (holding that while movant's lack of education may have delayed his efforts to vacate his state conviction, his procedural ignorance is not an excuse for prolonged inattention when promptness is required).

In conclusion, Johnson has presented no valid justification supported by the record for his failure to file his federal habeas corpus petition attacking the instant convictions before the expiration of the one-year limitations period. The time-bar is ultimately the result of Johnson's failure to timely prosecute state postconviction proceedings and then this federal habeas

17

corpus petition. Since any cognizable claim raised by Johnson in this habeas corpus proceeding instituted on October 20, 2009, is untimely, he is not entitled to review on the merits, as correctly asserted by the respondent.[14]

### V. Conclusion

It is therefore recommended that this petition for writ of habeas corpus be dismissed as time-barred pursuant to 28 U.S.C. §2244(d)(1)-(2).

---

[14] It is noted that even if the instant petition was not time-barred, Johnson would not be entitled to federal habeas corpus relief. Claim one, counsel rendered ineffective assistance when he failed to request a special jury instruction pursuant to Arizona v. Youngblood, 488 U.S. 51 (1988)(holding that failure of police to preserve potentially useful evidence is not a denial of due process of law unless defendant can show bad faith on part of police), is meritless for the reasons stated by the respondent in his response. See Response to Order to Show Cause at 13-4. (DE# 12). There is no indication whatever in the record that the police officers here acted in bad faith or intentionally failed to preserve evidence. Claim two, ineffective assistance of appellate counsel, was never raised before the Florida courts and is, therefore, unexhausted and prospectively procedurally barred from federal habeas corpus review. See 28 U.S.C. §2254(b),(c). See also Coleman v. Thompson, 501 U.S. 722, 750-51 (1991); United States v. Frady, 456 U.S. 152, 168 (1982); Wainwright v. Sykes, 433 U.S. 72 (1977); Collier v. Jones, 910 F.2d 770, 773 (11 Cir. 1990)(where dismissal to allow exhaustion of unexhausted claims would be futile due to state procedural bar, claims are procedurally barred in federal court as well). And, claim three, an independent claim of actual innocence, is not cognizable in this proceeding. See Herrera v. Collins, 506 U.S. 390, 400 (1993)(stating that "[c]laims of actual innocence based on newly discovered evidence have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding."); Townsend v. Sain, 372 U.S. 293 (1963)(the "existence merely of newly discovered evidence relevant to the guilt of a state prisoner is not a ground for relief on federal habeas corpus."). From full review of the record there appears to be no independent constitutional violation. See e.g., Giglio v. United States, 405 U.S. 150, 153 (1972); Brady v. Maryland, 373 U.S. 83, 87, 83 S.Ct. 1194, 1196-97, 10 L.Ed.2d 215 (1963); Napue v. Illinois, 360 U.S. 264, 269 (1959).

Objections to this report may be filed with the District Judge within fourteen days of receipt of a copy of the report.

SIGNED this 23rd day of August, 2010.

_____
UNITED STATES MAGISTRATE JUDGE

cc: Robert Johnson, Pro Se
DC# 416188
South Bay Correctional Facility
600 U.S. Highway 27 South
South Bay, FL 33493

Douglas J. Glaid, AAG
Department of Legal Affairs
444 Brickell Avenue
Suite 650
Miami, FL 33131